Good morning, Your Honours. May it please the Court, my name is Terry Pham. I represent the appellants. I collectively call them the T Station Defendants and Appellants. I would like to request a reserve two minutes for rebuttal, Your Honour. Sure, just keep an eye on the clock. Go right ahead. Thank you, Your Honour. I recognize that the parties did fully brief everything and I don't want to repeat any of the arguments and waste the Court's time. I did want to emphasize just a couple of points. Sure. Appellants recognize and understand that the trial courts do have a lot of discretion in terms of the award of attorney's fees, but I wanted to emphasize is that that discretion must be exercised with at least some degree of reasonableness or analysis, at least as to what fees and costs were reasonable and necessary for the prosecution of the plaintiff's successful claims here. And that discretion has to be measured based on the results actually achieved. At the outset of this case, on the successful individual claims, it was never more than $10,000. Soaking wet, her claim was never more than $10,000. I can't tell on this record, counsel, forgive me for interrupting, I can't tell on this record whether there was ever a settlement offer. There were numerous, numerous settlement discussions and offers made, Your Honour. Those are normally discussed with the lower court, but there were numerous offers made to settle this matter much, much well beyond what was actually achieved here. I don't need to know the amounts. It's just not in the briefing, so I didn't know if that was part of your argument here. You've argued strenuously that this was a small-value claim, and that's the way it turned out, certainly, but I couldn't see any indication that you had tried to settle it. Within the rules. None of that would have been disclosed to the court, but there were numerous, numerous, there were actual formal mediations. Okay, so I'm just asking what the district court knew. Is that something you think the court should have taken into account? Unfortunately, I don't think the courts are allowed to take into account settlement communications and offers. Well, they sure can if it's a Rule 68 offer, but that didn't happen here, is that right? Right. There wasn't a Rule 68 offer. Could I ask you a couple questions because your time's ticking away, and I don't want to hijack your argument, but I just want to be clear. I think you're not, but I'm not sure of this, I think you're not disputing that opposing party prevailed. Is that right? That's correct. They were the prevailing party on some claims, and that's, so I do, I should clarify. What's your strongest argument? What is your strongest argument? Our strongest argument, really, Your Honor, what we want to point out is that this would send the wrong message. These courts are burdened enough. Our trial courts, this court, are burdened enough. We have so many claims out there that are non-meritorious. This was a trumped-up claim that should never have been brought as a class action, and by allowing— Wait just a minute. What do you mean by a trumped-up claim? You mean the individual claim or the class claims? The class claims. The class claims. The individual claims, we recognize, had some merit. Had they brought only that individual claim, we wouldn't even be here, and I think this goes to Your Honor's point. There would have been a settlement. It would have been resolved. This would have not gone for six, seven years. All right. Now, I don't know if we can take into account your characterization that these are trumped-up claims because these, the court never reached the merits of those claims. I mean, right? It just went on the, you know, the class issue, you know, and didn't really discuss the merits of the claim, did it? If I understand Your Honor correctly, yes, in the sense that they didn't reach the individual claims of the other because it should have never been brought by this individual claimant and her counsel. They had no basis to bring a class action. If I may step back, it should be in the record. But the trial court, to follow up on Judge Tsushima's point, I don't think the trial court, he didn't certify the class, but we don't have a finding that this was a frivolous attempt to certify a class, do we? It's not a, it wasn't a, I suppose if I understand Your Honor's correctly, it wasn't a frivolous attempt to bring a class action. But if we are awarding attorney's fees on the unsuccessful class action. Well, we're not. We're not. And that is the issue. The total, the total fees were north of $600,000, right? The total fees that they were originally claiming, yes.  The total fees that they were originally claiming were well over $600,000. When we say fees, what we're talking about the attorney's fees? Attorney's fees that they were claiming was originally over $600,000. What our position is, is that had we, had it been brought as an individual claim, which was the only successful claim here, the fees would never have been even close to $10,000, much less $168,000 or $60,000. We appreciate that, but that's not what they did. They chose to bring this claim and try to certify the class, and they weren't successful. You're urging us that this would send a terrible message, but I think Judge Wallach's point is one message it would send is these folks took a 75% reduction in their fee. If the court accounted for that. Forgive me for interrupting. Well, the court, and that is the issue that we have. The court simply did a percentage allocation without looking at, and what I think is required to be looked at, what was actually reasonable and necessary for what was ultimately successful. Well, the court certainly examined that, or at least they said they did. The court simply said that they were intertwined, and therefore the court had to award some fees based on not looking at hindsight, but then that begs the question, if they're not looking at hindsight, then they should be looking at the outset, and at the outset of this case, had it been properly brought as an individual claim rather than a class action, which was unsuccessful, then they wouldn't have been allocating, wouldn't have needed to incur 168,000 in fees. That's the issue here, because if we allow parties, litigants, attorneys to bring claims with whatever they can possibly muster, and it wasn't a proper class action, they were suing individual operators of different independent operators when she was never employed by any of them except for the one, and so had they only brought her individual claim, they would have at the outset not incurred. There was certainly an argument that those were interrelated companies, is there not? I apologize, Your Honor. There was an argument that those were interrelated companies, was there not? There was that argument, which was unsuccessful, and that is our point. If that argument is unsuccessful, they should not be allocated any portion of those fees. Counsel, there's just not authority to support your position. What's your strongest authority? I think I must be overlooking it. The authority, again, Your Honor, is actually set forth in our briefs. The cases that we cite are directly on point. There is the Farrar case, which is a California, and we are looking to California law, on the case, virtually identical situation, where the plaintiff brought a class action that should never have been brought. Her individual claims were successful. She did succeed. We don't have that finding from the district court here. You've cited a couple of different cases where California courts, trial courts, very intimately familiar with the case have said, you know, there was no way this was ever going to make it. We don't have that here. We have. That's your client's position, and I appreciate that, but we do not, as an appellate court, have that record where the trial court found that these were specious claims. In the cases that we cited, I don't believe there was any evidence of settlement communications and offers to pay either because that wouldn't have been. I think you misheard me. I didn't say settlement. I said specious claims. You cited some cases where the trial courts found that the claims were utterly meritless.  Oh, no, no, no. I apologize, Your Honor. The courts in the cases that we cited awarded, found in favor of the plaintiff. They were the prevailing party, and that is the Farrar case as well. The plaintiff prevailed, and so her claim was not specious. It was a proper claim. We have the same situation here. It was a proper individual claim. It was never a proper class action claim, and hence the court in that Farrar case as well also determined that she succeeded on her individual claim. She's entitled to her fees on the individual claim, but as to the class claims, they struck down the attorney's fees award, and that is what we would respectfully request here. Is that your strongest authority? We did cite two cases. Those are the strongest authorities. I'm familiar with both of them, so let me make sure that I get out of your way. Judge Wallach, do you have additional questions? No, I don't. Judge Tashima? No. All right. When you come back, we'll put a minute on the clock for rebuttal. Thank you, Your Honor. Thank you. I appreciate the time. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the Court. My name is Kevin Kelly with the firm of LTL Attorneys, and I represent the appellee, Boudie Zhao, in this action. Based on some questions and comments from the Court, I will cut down my argument just to focus on the relevant issues. First, I'll start with the standard of review. Appellants here admitted that they're not challenging the prevailing party designation, which they did in their opening brief. So here, I guess there's no contention that the standard of review should be anything different than abuse of discretion. And under abuse of discretion, there is no reason to overturn the bankruptcy court's decision. Well, let me ask a question about that, because one of the factors under Hensley is the extent of the plaintiff's success. Now, I know the BAP, you know, mentioned that, well, the district court considered this, but I really can't tell exactly how the district court factored that into its, you know, percentage determination. Where in the record did it show, you know, exactly what the district court did in terms of gauging the extent of the Well, I think it's shown in the last two orders, Your Honor. Last two? Last two, which are the Bankruptcy judge's orders? Yes. Okay, show me what that is. That is excerpts record 47 to 52, and that is I'm trying to still find the best site. So 49, you know, on one hand, a reduced fee award is appropriate when a claimant issues only limited access. On the other hand, fees are not reduced when a plaintiff prevails on one of several factually related claims. Well, I mean, that's just, you know, that's what the law is, but what I want to know is, you know, how the district court applied that to this case. You know, the thing that bothers me most about this award is it's about what, the actual recovery, what is it, three or four or five percent of what you saw? Yes.  Yes, Your Honor, but I believe What I want to know is, you know, how the district court analyzed that and how it factored that into the decision to award what it is. Can you show me the record where the district court did that? Well, I think, for one thing, the district court is under an estimation proceeding, so it's not taking detailed findings on Well, that may be one of its mistakes. Well, but it is an estimation proceeding, so it's a summary proceeding. But it clearly considered these issues when it reduced the fee request by 75 percent. And let me add there, the banker's court also noted Well, the recovery was about 4 percent of what it was after, so Yes, Your Honor. How did it get from 4 percent to, you know, 25 percent? It relied on Chavez and California public policy decisions. So Chavez says you don't look at the fees at the time, at the end of the case. You look at how reasonable the fees are at the time they're incurred. And the bankruptcy court found that the fees were reasonable at the time they were incurred. It also found other California public policy decisions Oh, but see, that doesn't address the, you know, the relationship between the successful claim and the unsuccessful claim. I mean, you say, well, but, you know, he did one on some, but it was reasonable. I mean, that's not an analysis. That's a conclusion. Well, it did persuasively, at ER 49, discuss the interrelated and intertwined claims. At ER 49, it says many factual and legal issues cut across both the individual and putative class claims, such as debtor's written policies, its policies and practice, its relationship with affiliates who might or might not be alter egos, not just for the purpose of collecting any damages, but also for purposes of establishing wage trimming or other issues through evidence of common practices or control. Also, the bankruptcy court noted that before the $670,000 request from Apelli, Apelli had self-revised its attorney fee request to deduct another $400,000 in fees. Basically, all fees that Apelli, in their discretion, found were related solely to the class claims. So really, the fee award was only less than 15% of the actual amount of fees incurred in the litigation. Well, if you want to take that earlier amount into consideration, I mean, that means the recovery was even less than what I said it is, like less than 1% of what was sought, isn't it? Yes, but I believe the California courts reject a strictly proportional approach. I'm not talking about strictly proportional, but it has to be some rational relationship between the amount recovered. I mean, that's the purpose of that entity factor. You have to take the extent of the plaintiff's success into account. And I think on this point, Hayen v. Safeway, cited by the bankruptcy appellate panel, is most on point. This is an unpublished California court of appeal case, which the bankruptcy appellate panel found right to cite because it was, as a federal court, it would get an insight as to how a California court of appeal would decide this issue. And that case is exactly on point. Their class certification was denied. A single plaintiff went to trial. She only got 25% of the total damages she sought. Here we got more like 75% of the damages we sought. And there, so she got $26,000 in damages, and she was awarded over $600,000 in attorney's fees. The California court of appeal affirmed that $600,000 plus in attorney's fees, which the trial court had only applied a negative 40.4 multiplier, Lodestar. So here the fees are much more reasonable. Talk about the policy behind awarding fees in these labor-related cases. Yes, I believe the policy is that they should be encouraged. Why? Because these cases are usually somewhat low-value individually, so that the class action should be encouraged, or else there is no efficient remedy for someone to find counsel and pursue these claims. And that's why the class action remedy and these labor code claims are encouraged by the fee-shifting statutes, the statutes that generally protect non-prevalent plaintiffs from incurring cost awards against them, that sort of thing. This is the same thing with FIHA cases and consumer action cases. Because FIHA and consumer class action cases, because they're low-value claims initially, if litigated individually. Individually, usually. Sometimes not for FIHA, sometimes. Sometimes, yes. Oh, and as Your Honors pointed out, there's no finding on the record that there's no merit to these class claims. There was obviously merit to appellees' claims. The bankruptcy court did not reach the merits. It dismissed or denied the class certification claims under a summary procedure, under its estimation procedure, and so it didn't reach the merit of those claims. There's reason to believe that appellees' claims had merit, so the punitive class members' claims also had merit. And there's also merit to the argument that it wasn't integrated enterprise. They shared shareholders. They shared policies. They shared practices. Finally, I would like to distinguish the case that appellant said was her strongest authority in FARO, and that case is off-point because there the court found that the plaintiff did not meet all the elements of her claim and granted only $1 in nominal damages. That is different than the case here where plaintiff... not closely related, and then she also cited Harrington. But that's the case where the court said it was plain that the value of the case was really $44 and that it was never going to succeed as a viable class action. Yes, and that there was no... Still, I think we all agree upon the controlling authority and that it's key that the district court made a finding about the interrelated nature of the issue. So do you want to talk a little bit about that? Yes. As I said before, the district court persuasively, as cited by the Bank Street Appellate Panel, the district court persuasively made a finding on that. There were common labor practices and policies amongst all the interrelated entities, and that was the main focus of the litigation in the state court. Could you be more specific? What kinds of common labor practices were interrelated? Handbook, managers, and labor practices. I mean, so the controlling things that put the practices in place were the same managers or same maybe above-handed... Are we talking about rest-break policies? Yes, rest-break, meal-break, and overtime primarily. I'm sorry, rest-break and...? Meal-break and overtime. Oh, meal-break and overtime. All right. Overtime primarily, yes. Did you have anything else? You've exceeded your time, so I'll have to ask you to wrap up. I think that is all. I will rest on the brief. Okay, thank you. We'll hear from opposing counsel, please. Thank you again, Your Honor. Sure. I did want to just address a couple of the points that Your Honor has raised with counsel, specifically with respect to the intertwining claim and where it appears in the record there is none, and that is part of the problem that we're having, Your Honors. There is none what? There were no intertwined claims. No analysis as to why they were intertwined and what specifically was intertwined and why these fees were necessary for whatever intertwined claims there were. Well, I think there is. He discussed, for example, that discovery was necessary to prove up her claim. You needed the same manuals and to discover the same information about what the practices were, policies and practices regarding meal-break, rest-break, and her claims. Why is that not intertwined? Because, Your Honors, had it not been brought as an individual claim... It doesn't. They don't have to do that. So my question is different. I realize that you wish they hadn't brought a class action. I'm trying to figure out why it was an abuse of discretion to award fees. And so, specifically, the Court, we all agree what the controlling authorities are, and so the question is whether there really were interrelated claims. In order to... Please let me get to my question. In order to prove that there were sort of issues that they had what they needed to certify a class for commonality, typicality, and numerosity. For commonality purposes, it seems like that's the obvious overlap because they had to look to see what are the policies and practices regarding meal-break, rest-break, overtime. So why is that not common? The issue, Your Honor, is not that whether it's common or that they could have, but it has to be inextricably intertwined. How is it not? That's what I'm trying to figure out. Why wasn't that a common issue between her individual claim and the putative class? The issue, Your Honor, is not whether or not it's common. It's whether it's inextricably intertwined. I understand the standard, and I'm waiting for you to answer why you think it wasn't inextricably intertwined. And that's what I'm explaining. It's not inextricably intertwined because, for example, in the example that Your Honor is giving in terms of propounding discovery, the Court needs to look at what's the cost and the fees reasonably incurred to propound discovery for the individual plaintiff and claimant, as opposed to propounding discovery for a failed class action. So by awarding all of the fees that she spent and time spent propounding discovery for the class action, it's not inextricably intertwined. The Court could have separated how much time did they spend propounding discovery for these 10 other defendants that should never have been brought, or what was the time spent to propound one set of discovery. It's 2020 hindsight, but her argument was that there was an alter ego, that one person was controlling all of the T Station entities and running the same... by the same policies and practices that she found infirm. I fully appreciate she didn't prevail on that, but that's the 2020 hindsight that you're asking us to engage in. And that is why all courts, including the U.S. Supreme Court, in determining reasonable attorney's fees, has told us it has to be based on the results achieved. You have to look at the hindsight. You have to look at what was achieved, ultimately. The Hensley Court discussed that. If the ultimate... Counsel, you're way over time, so please wrap up. Go ahead and finish this thought, but I just want you to know you're... Okay. We have to ultimately get the results achieved here. And I apologize I'm not explaining it well enough, but what I'm talking about is the Court could have and should have done an actual analysis of what should have cost this counsel, this plaintiff, to bring her claims. Not what she did, ultimately, which was not successful. I did want to address very quickly the fee haul issue and the policy issue. Counsel, you're really over time. I'm going to have to ask you to stop. I apologize. Thank you. Not at all. Thank you very much for your arguments. Thank you both. We'll take that case under advisement.
judges: TASHIMA, UNKNOWN, CHRISTEN